UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                                :

OVES ENTERPRISE, SRL,                     :

                                                :

                      Plaintiff,        :

                                                :       24-cv-03581 (LJL)

         -v-                         :

                                                :      <u>OPINION AND ORDER</u>

NOWWITH VENTURES, INC. d/b/a      :
VIDEOSHOPS,                      :

                                                :

                      Defendant.    :
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Plaintiff OVES Enterprise, SRL ("Plaintiff") moves, pursuant to Federal Rule of Civil

Procedure 55, for entry of a default judgment against NOWwith Ventures, Inc., doing business as

VideoShops ("Defendant").  Dkt. No. 15.  For the reasons that follow, the motion is granted.

## BACKGROUND

      The Court assumes the truth of the well-pleaded allegations of the complaint for purposes

of the motion for a default judgment.  *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d

114, 137 (2d Cir. 2011).

      Plaintiff is a limited liability company organized under the laws of Romania.  Dkt. No. 1

¶ 4.  It is a global software engineering company that provides full-scale software development

services to a wide range of clients around the world.  *Id.* ¶ 9.

      Defendant is a corporation organized under the laws of Delaware, with its principal place

of business in New York, New York.  *Id.* ¶ 5.  It is a venture capital-backed, self-styled

"revolutionary personal commerce platform" that boasts a roster of high-profile investors,

including baseball player Alex Rodriguez.  *Id.* ¶ 10.

On or about May 18, 2023, Defendant engaged Plaintiff to provide software development services related to the development of its widely touted "social commerce" platform. *Id.* ¶ 11. The terms of the engagement are set forth in a Professional Services Agreement dated May 18, 2023 (the "PSA"). *Id.* ¶¶ 1, 12; Dkt. No. 1-1. Pursuant to the terms of the PSA, Plaintiff agreed to provide to Defendant "exclusive software development services" as requested by Defendant in exchange for a fee of $54 an hour for services rendered. Dkt. No. 1 ¶ 12; Dkt. No. 1-1 ¶¶ 1, 3. The operative provision with respect to compensation states:

> **Compensation.** The Company [Defendant] shall pay Service Provider [Plaintiff] a fee of Fifty Four US Dollars ($54.00) per hour where Services have been rendered. [Plaintiff] shall provide an invoice to [Defendant] within five (5) days following the end of a calendar month of the Term; [Plaintiff] shall pay the undisputed portion of each such invoice within 30 days following [Defendant's] receipt thereof. The fees shall be paid at the end of every two (2) weeks for the Services rendered in such (2) week period (i.e., on the Friday of the second week). No additional fees (or expenses) shall be due for the Services other than those set forth herein. All payments shall be suspended for any delay in Service Provider providing Services in accordance with this Agreement.

Dkt. No. 1-1 ¶ 3. The PSA also contains a "Cure" provision. It states:

> **Cure**. Except as otherwise described in this provision, no breach of this Agreement on the part of either party shall be deemed material, unless the party claiming breach has given the alleged breaching party written notice of such breach and the recipient of such notice has failed to cure such breach within thirty (30) days after receipt of such notice, provided such breach can be cured and provided that such breach is not repetitive in nature.

Dkt. No. 1-1 ¶ 25.

Plaintiff and at least six dedicated software engineers and programmers commenced work pursuant to the PSA on or about May 22, 2023, and continued through October 3, 2023, at which time work was halted due to nonpayment of Plaintiff's invoices. Dkt. No. 1 ¶ 14. Plaintiff regularly sent Defendant invoices in the form of weekly timesheets detailing the work performed, the personnel performing such work, the hours devoted to such work, and the corresponding hourly charges for each of the software engineers working on behalf of Plaintiff.

*Id.* ¶ 16.  Drafts of the timesheets were submitted to Plaintiff for pre-approval and were pre-approved by Plaintiff before being finalized by Defendant and submitted to Plaintiff for payment. *Id.* ¶ 17.  Defendant received and retained each invoice without objection or complaint.  *Id.* ¶ 18.

Defendant tendered payment on just four of nineteen invoices (with two of those payments being over one month late).  *Id.* ¶ 19.  In August and September 2023, Defendant stated that it would pay Plaintiff, promising that "[g]etting you paid is my highest priority" and "I can assure you we will get all of these invoices paid promptly."  *Id.* ¶¶ 22–27, 31–33.  On October 5, 2023, Plaintiff informed Defendant that all work would be halted until the payment issues were rectified.  *Id.* ¶ 35.  Defendant responded "I understand you are stopping until your team is paid.  We will get this to you as [soon as] possible."  *Id.* ¶ 36.  Thereafter, through October 2023 and into November 2023, Defendant continued to promise Plaintiff it would pay the outstanding invoices.  *Id.* ¶ 37.  However, the promised payments were never made, and Defendant is still owed $289,764 for services rendered to Plaintiff under the PSA.  *Id.* ¶ 38.

## PROCEDURAL HISTORY

Plaintiff initiated this case by complaint filed on May 9, 2024.  Dkt. No. 1.  The complaint alleges causes of action for breach of the PSA, *id.* ¶¶ 39–44, account stated, *id.* ¶¶ 45–49, and quantum meruit, *id.* ¶¶ 50–56.  Plaintiff personally served the summons and complaint on Defendant through its registered agent on May 13, 2024.  Proof of service was filed on the Court's docket on May 21, 2024.  Dkt. No. 8.  Defendant has failed to answer or otherwise appear in the action.  Dkt. No. 15-2 ¶ 5.  The Clerk of Court entered a certificate of default on July 25, 2024.  Dkt. No. 11.  Plaintiff served the certificate of default on Defendant by overnight mail on July 11, 2024.  Dkt. No. 12.

On September 13, 2024, Plaintiff filed this motion for a default judgment.  Dkt. No. 15.

## DISCUSSION

Federal Rule of Civil Procedure 55 sets forth a two-step procedure for the entry of judgment against a party who fails to defend: the entry of a default and the entry of a default judgment. *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). First, a party seeking a default judgment must petition the clerk for entry of default, which "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(a). The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings. *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(b).

Whether entry of default judgment at the second step is appropriate depends upon whether the well-pleaded allegations against the defaulting party establish liability as a matter of law. *See Mickalis Pawn Shop*, 645 F.3d at 137. While a defendant who defaults admits the well-pleaded factual allegations in a complaint, a party in default does not admit conclusions of law; as such, "a district court need not agree that the alleged facts constitute a valid cause of action." *Id.* (internal quotation marks and citation omitted); *see Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020) ("The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations."). Therefore, this Court is "required to determine whether the [plaintiff's] allegations establish the [defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

The legal sufficiency of a non-defaulting party's claims "is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007),

4

and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor." *WowWee Group Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019).

## I.    Jurisdiction

The Court has subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332.  Plaintiff is a limited liability corporation organized under the laws of Romania and Defendant is a Delaware corporation with its principal place of business in New York.  Dkt. No. 1 ¶¶ 4, 5.  The amount in controversy exceeds $75,000.  *Id.* ¶ 3.

The Court originally identified a defect in the allegations of the complaint regarding diversity.  A limited liability corporation takes on the citizenship of its members.  *See Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012) (for diversity purposes, a limited liability company "takes the citizenship of each of its members").  However, the complaint did not allege the citizenship of the members of Plaintiff.  Dkt. No. 1 ¶ 2.  Accordingly, on October 10, 2024, the Court issued an order to show cause why the complaint should not be dismissed for failure to allege diversity jurisdiction or Plaintiff should not file an amended complaint identifying the citizenship of the members of Plaintiff.  Dkt. No. 18.  Plaintiff responded to the order to show cause on October 22, 2024, with a letter brief and the declaration of its Chief Executive Officer, Mihai Filip.  Dkt. Nos. 19-20.  Filip states that he is one of two members and owners of Plaintiff, and the other member and owner is Mariana Filip.  Dkt. No. 19 ¶¶ 3-4.  Both Mihai Filip and Mariana Filip are citizens of Romania who are domiciled in Romania.  *Id.* ¶¶ 3-4.  Based on the declaration, the Court has diversity jurisdiction. 28 U.S.C. § 1332(a)(2).

"[A] plaintiff premising federal jurisdiction on diversity of citizenship is required to include in its complaint adequate allegations to show that the district court has subject matter

jurisdiction." *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 64 (2d Cir. 2009). However, Plaintiff's failure to comply with those procedural requirements is not fatal to the Court's exercise of jurisdiction. *Id.* "[W]here the facts necessary to the establishment of diversity jurisdiction are subsequently determined to have obtained all along, a federal court may . . . allow a complaint to be amended to assert those necessary facts," or, in the alternative, may "deem the pleadings amended so as to properly allege diversity jurisdiction" "when the record as a whole, as supplemented, establishes the existence of the requisite diversity of citizenship between the parties." *Id.* (citing *Canedy v. Liberty Mutual Insurance Co.*, 126 F.3d 100, 103 (2d Cir. 1997)); *see also Enemigo Ltd. v. Trinity Beverage Grp., LLC*, 2024 WL 3104803, at *7 (S.D.N.Y. June 24, 2024); *Rosario v. Burnsed Trucking Inc.*, 2023 WL 3010346, at *1 (S.D.N.Y. Mar. 27, 2023). The record here demonstrates the requisite diversity of citizenship and presence of subject matter jurisdiction. Accordingly, the Court deems the complaint to be amended to properly allege the citizenship of Plaintiff.

The Court also has personal jurisdiction. To determine whether the exercise of personal jurisdiction is proper in a diversity case, the Court must conduct a two-part inquiry: first, the Court looks at whether there is a basis for personal jurisdiction under the laws of the forum state, and second, the Court must examine whether the exercise of personal jurisdiction comports with constitutional due process. *See Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002). Defendant has its principal place of business in New York, and is therefore a citizen of New York, New York. CPLR § 301; *see also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016). The PSA also has a consent to jurisdiction clause:

> The parties consent and agree that all legal proceedings arising out of or relating to this Agreement shall be exclusively maintained in either the federal or state courts in New

York, New York located in the County of New York, State of New York and, by execution and delivery of this Agreement, each of the parties to this Agreement accepts the exclusive jurisdiction of such courts and irrevocably agrees to be bound by any judgment rendered thereby in connection with this Agreement.

Dkt. No. 1-1 ¶ 15.[1]  The Court may therefore properly exercise personal jurisdiction over the Defendant.

## II.    Liability

Taking the allegations of the complaint as true, Plaintiff has stated facts sufficient to establish all of the elements of its claim for breach of contract.  Under New York state law, the essential elements of a breach of contract are "the existence of a contract, the plaintiff's performance under the contract, the defendant's breach of that contract, and resulting damages." *Carbonyx License & Lease LLC v. Carbonyx Inc.*, 2019 WL 6701910, at *3 (S.D.N.Y. Dec. 9, 2019) (quoting *JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 893 N.Y.S.2d 237, 239 (2d Dep't 2010)).[2]  Plaintiff has alleged the existence of a contract between the parties in the form of the PSA, Dkt. No. 1 ¶¶ 11–13, that Plaintiff performed pursuant to the PSA, *id.* ¶¶ 14–18, that Defendant failed to perform, *id.* ¶¶ 19–38, and that Plaintiff has suffered damages, *id.* ¶ 38.

Plaintiff has also stated all of the elements of its claim for account stated. Under New York law, a plaintiff can establish a claim for account stated by showing that "(1) an account was presented; (2) it was accepted as correct; and (3) Defendant promised to pay the amount stated." *Arch Specialty Ins. Co. v. TDL Restoration, Inc.*, 2021 WL 1225447, at *9 (S.D.N.Y. Mar. 31,

---

[1] The Court notes that while it is not required to address personal jurisdiction, *see Everything Yogurt Brands, LLC v. Bianco*, 2024 WL 3497757, at *2 (S.D.N.Y. July 22, 2024);, it is prudent for the Court to do so where personal jurisdiction is clear because a default judgment is void if it is entered without personal jurisdiction and may thereafter be subject to collateral challenge, *see Select Harvest USA LLC v. Indian Overseas Bank*, 2023 WL 2664079, at *7 (S.D.N.Y. Mar. 28, 2023).

[2] The parties agreed to the choice of New York law.  *See* Dkt. No. 1-1 ¶ 15 ("This agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to principles governing conflict of laws.").

2021).  "An account stated assumes the existence of some indebtedness between the parties, or

an express agreement to treat the statement as an account stated." *Erdman Anthony & Assoc. v.*

*Barkstrom*, 747 N.Y.S.2d 670, 671 (4th Dep't 2002) (quoting *M. Paladino, Inc. v. J. Lucchese &*

*Son Contracting Corp.*, 669 N.Y.S.2d 318, 319 (2d Dep't 1998)).  It requires "an agreement

between the parties to an account based upon prior transactions between them." *LeBoeuf, Lamb,*

*Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 64 (2d Cir. 1999) (quoting *Chisholm-Ryder*

*Co. v. Sommer & Sommer*, 421 N.Y.S.2d 455, 457 (4th Dep't 1979)).  "The second and third

elements 'may be implied if a party receiving a statement of account keeps it without objecting

to it within a reasonable time or if the debtor makes partial payment.'" *Fed. Corp.*, 2021 WL

2550472, at *3 (quoting *IMG Fragrance Brands, LLC. v. Houbigant, Inc.*, 679 F. Supp. 2d 395,

411 (S.D.N.Y. 2009)); *see also LeBoeuf*, 185 F.3d at 64 (holding that an agreement to pay the

account presented "may be implied if a party receiving a statement of account keeps it without

objecting to it within a reasonable time or if the debtor makes partial payment"); *Fort Prods.,*

*Inc. v. Men's Medical Clinic, LLC*, 2016 WL 797577, at *4 (S.D.N.Y. 2016) (same); *Wistron*

*Neweb Corp. v. Genesis Networks Telecom Servs., LLC*, 2022 WL 17067984, at *16 (S.D.N.Y.

Nov. 17, 2022).[3]  Plaintiff alleges that accounts were presented in the forms of the invoices, Dkt.

---

[3] Plaintiff's breach of contract and account stated claims are not duplicative of one another
because they allege distinct damages.  *See NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537
F.3d 168, 175 (2d Cir. 2008); *Wistron Neweb Corp. v. Genesis Networks Telecom Servs., LLC*,
2022 WL 17067984, at *15 (S.D.N.Y. Nov. 17, 2022).  "Under New York law, a contract that
provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce
the contract is enforceable if the contractual language is sufficiently clear . . . On a valid cause of
action for account stated, a plaintiff is entitled to recover the amount due on the defendant's
account.  Recovery on such a claim does not ordinarily include an award for attorneys' fees . . .
Thus, when a party has both a claim for account stated and a claim under a contract that provides
for an award of attorneys' fees, the claims for breach of contract and account stated are not
duplicative." *NetJets*, 537 F.3d at 175.

No. 1 ¶¶ 16, that they were accepted as correct, *id.* ¶¶ 17–18, and that Defendant promised but failed to pay the amount stated, *id.* ¶¶ 19–38.

Plaintiff does not seek a default judgment on its claim for quantum meruit and does not address the issue in its Memorandum of Law in Support of Default Judgment.  A claim in quantum meruit does not lie where the party is entitled to relief for breach of contract.  A valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for services rendered pertaining to the same subject matter.  *See Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, 680 F. Supp. 3d 322, 338–39 (S.D.N.Y. 2023) (citing *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987); *Bader v. Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d 397, 414 (S.D.N.Y. 2011); *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 274 (N.Y. 2009); 30 Williston on Contracts § 77:124 (4th ed. 2023); Restatement (Third) of Restitution and Unjust Enrichment § 2 (2011)).  "[W]here there is a contract that expressly outlines the parties' own definition of their respective obligations, then courts are loath, due to considerations of 'both justice and efficiency,' to override those obligations in favor of 'obligations that the law would impose in the absence of agreement.'" *Frio Energy*, 680 F. Supp. 3d at 340 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 2).  The Court deems the claim to be abandoned.

## III.    Damages

### A.    Unpaid Invoices

To determine the amount of damages that should be awarded on a default judgment, Federal Rule of Civil Procedure 55(b)(2) "leaves the decision of whether a hearing is necessary to the discretion of the district court." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012).  And "[w]here, on a damages inquest, the plaintiff makes a damages submission and the defaulting defendant makes no submission in opposition and does not request

a hearing, the court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs." *Id.*

Here, Plaintiff has presented evidence that it submitted weekly timesheets to Defendant detailing the work performed, the personnel performing such work, the hours devoted to such work, and the corresponding hourly charges for each of the software engineers working on Defendant's behalf. Dkt. No. 15–3 ¶¶ 9–12; Dkt. No. 15–5 (all invoices submitted, paid and unpaid); No. 15–6 (emails transmitting invoices). Plaintiff also presented evidence regarding the nonpayment of 15 of the 19 invoices submitted. Dkt. No. 15–3 ¶¶ 13–21; Dkt. No. 15–7 (spreadsheet prepared in the ordinary course of business summarizing the payment and nonpayment of the weekly invoices); Dkt. No. 15–8 (October 2, 2023, email sent from Plaintiff to Defendant listing the paid and unpaid invoices)[4]; Dkt. No. 15-10 (November 7, 2023, demand letter from Plaintiff's counsel to Defendant enumerating the 15 unpaid invoices). The unpaid invoices total $289,764.00. *Id.* That amount constitutes the damages owed to the Plaintiff.

**B.    Statutory Interest**

Plaintiff requests 9% statutory prejudgment interest. The statutory rate of prejudgment interest prescribed by New York law is 9% per annum. *See* N.Y. C.P.L.R. 5004. New York law provides that prejudgment interest "shall be recovered upon a sum awarded because of a breach of performance of a contract." N.Y. C.P.L.R. § 5001(a); *see also U.S. Naval Institute v. Charter Communications, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991) ("[A] plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right."); *Kramer, Levin,*

---

[4] The Court notes that this email denominates the invoices in Euros. However, this appears to be a simple error, and does not undermine Plaintiff's claim to their U.S.-dollar-denominated total given that the actual invoices, Dkt. No. 15–5, are dollar-denominated, and the enumerated list in the email matches the dollar-denominated totals in the ordinary course spreadsheet, Dkt. No. 15–7.

*Nessen, Kamin & Frankel v. Aronoff*, 638 F. Supp. 714, 721 (S.D.N.Y. 1986) (holding that C.P.L.R. 5001(a) applies to an action on an account stated).  New York law further provides that, "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred." N.Y. C.P.L.R. 5001(b).  "Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  *Id*.  This provision "grants courts wide discretion in determining a reasonable date from which to award pre-judgment interest."  *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994).  Here, Plaintiff's cause of action first existed upon the nonpayment of the invoice due on July 1, 2023, and continues through its last unpaid invoice, which was due on October 24, 2023.  Dkt. No. 15–3 ¶ 23.  The reasonable intermediate date between July 1, 2023, and October 24, 2023, is August 27, 2023 (the exact midpoint between those dates).  *See, e.g., Asesoral Bus. Partners, LLC v. Seatech Worldwide Corp.*, 2021 WL 6755016, at *7 (S.D.N.Y. Dec. 16, 2021); *Jin v. Pac. Buffet House, Inc.*, 2009 WL 2601995, at *9 (E.D.N.Y. Aug. 24, 2009).

Accordingly, the Court orders that prejudgment interest shall apply to the $289,764 outstanding at a rate of 9% per annum, running from August 27, 2023, to the date of this judgment.

### C.    Attorneys' Fees

In addition to the invoice total plus interest, Plaintiff requests reasonable attorneys' fees and costs in the amount of $46,715.50.  "The awarding of attorneys' fees in diversity cases is governed by state law."  *Pristine Jewelers NY, Inc. v. Broner*, 2020 WL 2319184, at *2 (S.D.N.Y. May 11, 2020) (quoting *Raymond James & Assocs., Inc. v. Vanguard Funding, LLC*, 2018 WL 8758763, at *4 (S.D.N.Y. Apr. 16, 2018)).  "Under the 'American Rule' a prevailing

party is ordinarily not entitled to attorneys' fees except where expressly provided by statute or contract." *Westchester Fire Ins. Co. v. Massamont Ins. Agency, Inc.*, 420 F. Supp. 2d 223, 227 (S.D.N.Y.2005). "Under New York law, a prevailing party may recover attorney's fees from the losing party where authorized by . . . agreement." *Varbero v. Belesis*, 2020 WL 5849516, at *7 (S.D.N.Y. Oct. 1, 2020). In New York, however, "the court should not infer a party's intention to provide counsel fees as damages for a breach of contract unless the intention to do so is unmistakably clear from the language of the contract." *AT & T Corp. v. Publ'g Concepts L.P.*, 2010 WL 1191380, at *5 (S.D.N.Y. Mar. 29, 2010) (quoting *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003)); *see also NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) ("Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear.").

In this matter, Plaintiff relies on language in the PSA which provides that "[i]n any litigation, arbitration, or other proceeding by which one party either seeks to enforce its rights under this Agreement (whether in contract, tort, or both) or seeks a declaration of any rights or obligations under this Agreement, the prevailing party shall be awarded its reasonable attorney fees, and costs and expenses incurred." Dkt. No. 1-1 ¶ 15. This language is sufficiently clear on its face to manifest the Parties' intent to provide counsel fees as damages for breach. Plaintiff is therefore entitled to reasonable attorneys' fees. *See e.g., Uni-World Cap. L.P. v. Preferred Fragrance, Inc.*, 73 F. Supp. 3d 209, 237 (S.D.N.Y. 2014).

"Under New York law, 'when a contract provides that in the event of litigation the losing party will pay the attorney' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are

not unreasonable.'" *KLS Diversified Master Fund, L.P. v. McDevitt*, 532 F. Supp. 3d 126, 139–40 (S.D.N.Y. 2021), *aff'd*, 2022 WL 2759055 (2d Cir. July 13, 2022) (quoting *Diamond D Enters. USA, Inc. v. Steinsvaag*, 979 F.2d 14, 19 (2d Cir. 1992) (citation omitted)); *see Wells Fargo Bank N.W., N.A. v. Taca Int'l Airlines, S.A.*, 315 F. Supp. 2d 347, 353 (S.D.N.Y. 2003). "A variety of factors informs the court's determination of whether a requested amount of attorneys' fees is reasonable or unreasonable, including 'the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability and reputation; the customary fee charged by the Bar for similar services; and the amount involved.'" *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987) (quoting *In re Schaich,* 391 N.Y.S.2d 135, 136 (2d Dep't 1977), *appeal denied,* 366 N.E.2d 293 (1977)). An attorney fee clause "does not permit plaintiff to demand from defendant greater expenses than plaintiff has itself incurred." *Parker Hannifin Corp. v. N. Sound Props.*, 2013 WL 3527761, at *3 (S.D.N.Y. July 12, 2013) (internal citations omitted). Moreover, "while plaintiff may enter into any fee arrangement it wishes with counsel, it should not be permitted to manipulate the actual damage incurred by burdening the defendant with an exorbitant fee arrangement." *F.H. Krear*, 810 F.2d at 1263 (quoting *Equitable Lumber Corp. v. IPA Land Development Corp.*, 344 N.E.2d 391, 397 (N.Y. 1976)).

Here, Plaintiff has submitted counsel's contemporaneously prepared invoices for fees already paid to counsel, totaling $38,611, as well as a draft bill for yet-to-be-invoiced fees totaling $8,104.50. Dkt. No. 15–3 ¶ 27. Counsel's rates are reasonable. The reasonableness of counsel's rates is determined with reference to the "district in which the reviewing court sits." *Wistron*, 2023 WL 5211352, at *9 (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987)). In this district, partner billing rates in excess of $1,000 are "not

uncommon in the context of complex commercial litigation." *Themis Cap. V. Democratic Republic of Congo*, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014). The rates fall well within that range and are consistent with the difficulty of the questions involved in this litigation (which were not difficult), the skill required to handle the problems, and the lawyers' experiences, abilities, and reputations.

The fees were incurred by Jack A. Gordon at an hourly rate of $795 and Alex T. Paradiso at an hourly rate of $675. Jack A. Gordon is a founding partner of Kent, Beatty & Gordon, LLP ("KBG") and has been practicing law continually in New York since his admission to the bar in 1986. Alex T. Paradiso is a partner at KBG and has been practicing law continually in New York since his admission to the bar in January 2011.

The hours are reasonable. *See* Dkt. No. 15–1 at ECF 13. The Court therefore finds that Plaintiff is entitled to collect $46,715.50 in attorneys' fees from Defendant as the prevailing party in this matter under the terms of the PSA. Dkt. No. 1–1 ¶ 15.

## CONCLUSION

The motion for a default judgment is GRANTED. The Clerk of Court is directed to enter judgment in the amount of $289,764.00 plus 9% prejudgment interest accruing as of August 27, 2023, as well as $46,715.50 in attorneys' fees. The Clerk of Court is further directed to close the motion at Dkt. No. 15 and to close this case.

Dated: October 31, 2024
New York, New York

LEWIS J. LIMAN
United States District Judge